**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| United States of America,<br><br>v.<br><br>Robert Andrew Sprouse,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal Action No.: 0:19-cr-00420-JMC<br><br><br>**ORDER AND OPINION** |

Currently before the court is Defendant Robert Andrew Sprouse's ("Sprouse") Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 269.) Sprouse requests that the court enter a judgment of acquittal and a new trial as to certain counts of the Second Superseding Indictment (ECF No. 146). For the reasons set forth below, the court **DENIES** Defendant Sprouse's Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 269.)

## I. RELEVANT BACKGROUND

George Alexander Underwood ("Underwood") was elected Sheriff of Chester County in November 2012 and served as Sheriff until May 2019. (ECF No. 146 at 1.) During Underwood's tenure as Sheriff, Defendant Sprouse served as Underwood's Chief Deputy and Defendant John Neal ("Neal") was a lieutenant in the Chester County Sheriff's Office ("CCSO"). (*Id.* at 1–2.) On May 7, 2019, a federal grand jury returned an eight-count Indictment charging Defendants with civil rights violations, obstruction of justice, and false statements in relation to a conspiracy to conceal excessive use of force and unlawful arrest. (ECF No. 2.) A Superseding Indictment adding allegations of financial misconduct was filed on November 20, 2019. (ECF No. 81.)

In June 2020, prosecution of the case was transferred from the U.S. Attorney's Office for the District of South Carolina to the U.S. Department of Justice, Criminal Division, Public

Integrity Section. (ECF Nos. 127, 129, 132, 136, 128.) On September 16, 2020, a federal grand jury returned a seventeen-count Second Superseding Indictment against Defendants. (ECF No. 146.) The Second Superseding Indictment added a federal program theft charge as well as a series of wire fraud charges. (*Id.*) Specifically, the Indictment provides that Defendants conspired to wrongfully obtain funds by directing on-duty CCSO employees to provide manual labor on Underwood's property and by fraudulently obtaining payments for work not actually performed at federally funded checkpoints; that Defendants abused the right of others; and that Defendants provided false statements to investigative agencies and generated false documentation. (*Id.* at 5–6 ¶ 11.)

A jury trial was held in April 2021 (ECF Nos. 243–46), wherein Sprouse was found guilty of conspiracy in violation of 18 U.S.C. § 371, falsification of records in a federal investigation in violation of 18 U.S.C. § 1519, making a false statement in violation of 18 U.S.C. § 1001(a)(2), and federal program theft in violation of 18 U.S.C. § 666(a)(1)(A). (ECF No. 262.) At the conclusion of the Government's case-in-chief, Defendants moved for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court heard arguments and ultimately denied the motions. (ECF No. 247.) At the conclusion of the trial, Defendants renewed their motions and the court denied them.

On May 7, 2021, Sprouse filed a Motion for Judgment of Acquittal and Motion for New Trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (ECF No. 269.) Sprouse requests that the court enter a judgment of acquittal and a new trial as to Counts 1, 5, 8, and 9 of the Second Superseding Indictment (ECF No. 146). On May 21, 2021, the Government filed a Response in Opposition to Sprouse's Motion. (ECF No. 287.)

## II. LEGAL STANDARD

*a. Motion for Judgment of Acquittal*

Under Federal Rule of Criminal Procedure 29, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29 (c)(1). On a motion for judgment of acquittal, "the question is whether the evidence, viewed in the light most favorable to the prosecution, is such that the finder of fact might find the defendant guilty beyond a reasonable doubt." *United States v. Wooten*, 503 F.2d 65, 66 (4th Cir. 1974). "A defendant who brings a sufficiency challenge bears a heavy burden." *United States v. Clarke*, 842 F.3d 288, 297 (4th Cir. 2016) (citing *United States v. Palomino–Coronado*, 805 F.3d 127, 130 (4th Cir. 2015). The court's review of insufficient evidence claims is "sharply limited" and "a defendant is entitled to relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson v. Greene*, 155 F.3d 396, 405–06 (4th Cir. 1998) (internal quotations omitted). The court does not weigh the evidence or assess the credibility of witnesses and assumes that the jury resolved all contradictions in favor of the government. *United States v. Blank*, 659 F. App'x 727, 728 (4th Cir. 2016).

*b. Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). When a Rule 33 motion attacks the weight of the evidence, "the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arlington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government[,]" and, therefore, "it may evaluate the credibility of the

witnesses." *Id.* The court's discretion to award a new trial, however, should be exercised sparingly, and "a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006) (citing *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

## III. ANALYSIS

*a. Motion for Acquittal*

1. <u>Count 5 – Falsification of Records</u>

The jury also found Sprouse guilty of falsification of records in a federal investigation based upon the creation of an incident report that inaccurately depicted Kevin Simpson's[1] ("Simpson") activities on the day of his arrest. (ECF No. 262.) Title 18, United States Code, Section 1519 makes it a crime to alter, destroy, mutilate, conceal, cover up, falsify, or make a false entry in any record with intent to impede a federal investigation. To establish guilt, the Government must show: (1) that Sprouse altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry in any record, document, or tangible object; (2) that he did so with intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or in relation to or contemplation of any such matter; and (3) that he did so knowingly. 18 U.S.C. § 1519.

Sprouse argues that he was not present leading up to or during Simpson's arrest and, therefore, any information provided in the report would have been provided by other officers. (ECF No. 269 at 8–9.) Additionally, Spouse contends the record shows that Neal wrote the report

---

[1] Kevin Simpson was arrested by CCSO for public disorderly conduct and resisting arrest on November 20, 2018. (*See* ECF No. 276 at 996:19–20.) The grand jury charged Sprouse with entering Simpson's home on the day of his arrest, confiscating a cellphone without a warrant, and withholding information regarding the phone from federal agents. (ECF No. 146 at 8–9.)

and Sprouse's name does not appear anywhere on the report. (*Id.*) Accordingly, Sprouse appears to argue that the Government failed to show he "knowingly" falsified the incident report.

At trial, the Government presented evidence that Sprouse created and edited the incident report at issue on January 3, 2019, after he was contacted by an agent of the Federal Bureau of Investigations ("FBI"), as evidenced by Sprouse's unique username in the CCSO documentation system. (ECF No. 279 at 1388:9–21, 1390:15–21.) Further, the Government presented evidence to show that Sprouse had viewed the video of Simpson's arrest, which contradicted the statements made in the report, prior to creating the report. (ECF No. 277 at 1062:20–1063:3, 1109:4–13; ECF No. 279 at 1511:18–1512:1.) This evidence sufficiently supports the jury's verdict finding Sprouse guilty of falsifying a document.

2. <u>Count 8 – False Statement</u>

Sprouse was also convicted of falsely claiming to the FBI that he did not know how Simpson's phone was removed from his home on November 20, 2018. (ECF Nos. 146 at 16, 262 at 2.) To support a conviction for making a false statement in violation of 18 U.S.C. § 1001(a), the Government must show: (1) that Sprouse made a false, fictitious, or fraudulent statement or representation; (2) that the false, fictitious, or fraudulent statement or representation was material to a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States; and (3) that Sprouse acted knowingly and willfully, that is, that he knew the statement or representation was false, fictitious, or fraudulent and acted with intent to do something the law forbids. 18 U.S.C. § 1001(a). To establish that a statement was false, "the Government must negate any reasonable interpretation that would make the defendant's statement factually correct." *United States v. Race*, 632 F.2d 1114, 1120 (4th Cir. 1980) (quoting *United States v. Anderson*, 579 F.2d 455, 460 (8th Cir. 1978), *cert. denied*, 439 U.S. 980 (1978)). A

statement or representation "is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998). "It is irrelevant whether the false statement actually influenced or affected the decision-making process of the agency or fact-finding body." *Id.* Further, "[a] false statement's capacity to influence must be measured at the point in time that the statement was made." *Id.* at 307.

Sprouse contends that there was "no evidence presented at trial that [he] knowingly and willfully made a representation that was false to a federal agent." (ECF No. 269 at 7.) At trial, Julie Yelk, a Special Agent with the FBI, testified regarding her investigation of CCSO while she was assigned to the civil rights, public corruption, and white-collar crime squad in Columbia, South Carolina. (*See* ECF Nos. 279–80 at 1490–1563.) Agent Yelk testified that when she interviewed Sprouse, he stated that no phone was taken from Simpson's residence, and further since the phone was not evidence related to the crime, there was no reason it would have been confiscated. (ECF No. 279 at 1506:14–17, 1510:19–1511:4.) According to Agent Yelk, Sprouse also stated that if the phone had been taken, he would have known. (*Id.* at 1506:18–20.) However, Simpson's sister testified that Sprouse took a phone from the Simpson house on November 20, 2018, after her brother and mother were arrested. (ECF No. 278 at 1204:16–1205:3.) Additionally, Jonathan Curenton and Burley McDaniel, former CCSO employees, both testified that Sprouse gave the phone to McDaniel outside the Simpson home on the day of Simpson's arrest. (*Id.* at 1242:1–18, 1303:19–25.) Although Agent Yelk conceded that it was possible that Sprouse had forgotten about confiscating the phone when she spoke with him two (2) months later, it is the duty of the jury, not the court, "to weigh contradictory evidence and inferences, pass on the

credibility of witnesses, and draw the ultimate factual conclusions." *United States v. Gomez-Jimenez*, 750 F.3d 370, 379 (4th Cir. 2014), *as corrected* (April 29, 2014).

Sprouse also argues that "there was nothing material about the phone because it had nothing to do with this case." (ECF No. 269 at 7.) However, under this statute, it is the materiality of the statement or representation, not the materiality of the evidence, that is of importance. Agent Yelk testified that the phone was "a very substantial part [of] a civil rights investigation" because it was property seized from a private individual that was not properly documented. (ECF No. 280 1556:21–1557:7.) Thus, Sprouse's statement regarding possession of the phone would be material to the federal investigation. This evidence is sufficient to support the jury's finding that Sprouse knowingly made a false representation to a federal agent.

3. Count 9 – Federal Program Theft

The jury also found Sprouse guilty of federal program theft in violation of 18 U.S.C. § 666. (ECF No. 262 at 3.) To support this conviction, the Government was required to prove that: (1) Sprouse was, at the time alleged in the indictment, an agent of an organization or of any state or local government or agency that received, in any one-year period, benefits in excess of $10,000 under a federal program involving any form of federal assistance; and (2) that Sprouse embezzled, stole, obtained by fraud, without authority knowingly converted to the use of any person other than the rightful owner, or intentionally misapplied property valued at $5,000 or more owned by or under the care, custody or control of said agency. 18 U.S.C. § 666(a)–(b). The cost of an agency employee's labor is property for purposes of this requirement, as long as obtaining the employee's labor is an object of the offense. *See Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020). In determining whether a defendant is guilty of this offense, the jury does not consider bona fide salary, wages, fees, or other compensation, or expenses paid or reimbursed in the usual course of

business. 18 U.S.C. § 666(c). "Bona fide salary" means salary actually earned in good faith for work done for the employer. *United States v. George*, 841 F.3d 55, 62 (1st Cir. 2016) (citations omitted).

Sprouse contends that, "[b]ased on the evidence presented at trial, a reasonable juror could not find [him] guilty of federal program theft." (ECF No. 269 at 3.) Sprouse argues that, at trial, multiple deputies testified that it was normal for them to work at least twenty (20) hours over the required amount per week and, because CCSO was unable to compensate them for excess hours, they received compensatory time. (*Id.* at 3.) Sprouse alleges that the deputies used their compensatory time to work on the barn and therefore they were not on the clock, and that CCSO was not required to follow Chester County procurement practices. (*Id.* at 4–5.) Ultimately, Sprouse contends that the Government "failed to prove beyond a reasonable doubt that the deputies were on the clock when they were working on the barn[,]" and, therefore, failed to prove beyond a reasonable doubt" that he and Underwood stole an amount in excess of $5,000 from Chester County. (*Id.* at 5.)

The Government presented evidence at trial that Chester County receives federal grants exceeding $10,000 per year and that in 2017 Chester County received approximately $370,000 in federal grant money (ECF No. 275 at 632:1–18), meaning federal funds were under the "care, custody, or control" of Chester County at that time. The Government also offered evidence showing that Defendants knowingly conspired to convert property valued at $5,000 or more from Chester County through the labor of CCSO employees on personal projects. At trial, CCSO employee Billy Wayne Alley testified that he did manual labor on CCSO employees' personal property during work hours, including work on Sprouse's property at Sprouse's request. (ECF No. 274 at 491:9–494:9.) As to the work on Underwood's barn, several deputies testified that they

would work on Underwood's property during work hours (ECF No. 271 at 102:23–103:2; ECF No. 272 at 184:21–185:9; ECF No. 274 at 477:17–20), that they did not feel like they had a choice (ECF No. 271 at 103:12–13), and that they were taken off work assignments to do such work (*id.* at 104:17–25, ECF No. 272 at 185:10–186:8, ECF No. 274 at 489:20–24). The combined hours of manual labor on CCSO employees' private property by these deputies at their pay rates meet the $5,000 requisite amount under the statute. *See United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008) (finding that § 666 permits "the government to aggregate multiple transactions in a single count to reach the $5,000 minimum as long as they were part of a single plan or scheme"). Although there was conflicting testimony from one deputy who stated that the deputies were using compensatory time when they were working on the barn (ECF No. 274 at 508:19, 509:7–510:25), the court defers to the "jury's determinations of credibility and resolutions of conflicts in the evidence." *United States v. Louthian*, 756 F.3d 295, 303 (4th Cir. 2014). Even if some of the employees were using compensatory time and CCSO is not required to comply with the Chester County procurement policy, the evidence presented was sufficient to show that the jury believed that other employees were not using compensatory time. Accordingly, the Government presented sufficient evidence to support the jury's verdict finding Sprouse guilty of federal program theft.

4. Count 1 – Conspiracy

The jury found Sprouse guilty of conspiracy to violate federal law by falsifying records in a federal investigation and by committing theft from a federal program. (ECF No. 262.) Conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose. To prove the existence of a conspiracy, the Government must show each of the following beyond a reasonable doubt: (1) that Sprouse and at least one other person agreed to do something which federal law prohibits; (2) that they knew of the conspiracy and willfully joined

the conspiracy; and (3) that at some point during the existence of the conspiracy, one of the members of the conspiracy knowingly performed, in the District of South Carolina, one of the overt acts charged in the Second Superseding Indictment in order to accomplish the object or purpose of the agreement. *See, e.g.*, *United States v. Singh*, 518 F.3d 236, 252 (4th Cir. 2008); *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). "Knowledge and participation in the conspiracy may be proven by circumstantial evidence." *Tucker*, 376 F.3d at 238 (citing *United States v. Meredith*, 824 F.2d 1418, 1428 (4th Cir. 1987)). "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy." *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (internal quotations omitted).

Sprouse challenges the jury's finding that he conspired to falsify records because there is no evidence that any type of agreement was formed between the parties or that Sprouse had any knowledge that the events in the police report as they relate to Simpson were false because he was not present at the time of the arrest. (ECF No. 269 at 6.) As stated above, the Government presented evidence at trial to support the jury's finding that Sprouse and Neal conspired to falsify records in a federal investigation by showing that both Sprouse and Neal edited the incident report. (ECF No. 279 at 1388:9–21, 1390:15–21, 1391:5–14.) The Government also provided evidence showing that Sprouse had knowledge of the inaccuracy of the statements made within the report. (ECF No. 277 at 1062:20–1063:3, 1109:4–13; ECF No. 279 at 1511:18–1512:1). This evidence is sufficient to support the jury's guilty verdict for conspiracy to violate federal law by falsifying records in a federal investigation.

Sprouse also contends a reasonable jury could not hold him liable for conspiracy to commit federal program theft because the deputies working on Underwood's barn were not working on the clock for Chester County and, even if they were, Sprouse had no financial interest in the barn and could not have benefitted from such work. (ECF No. 269 at 6.) As the explained above, the Government presented evidence at trial that Defendants, as agents of Chester County, converted property valued at $5,000 or more that was under the "care, custody, or control" of Chester County through the labor of CCSO employees on personal projects. Specifically, evidence showed that Defendants directed subordinates to work on projects on the personal property of CCSO employees (ECF No. 271 at 102:11–13; ECF No. 274 at 491:9–494:9), during work hours (ECF No. 271 at 102:23–103:2; ECF No. 272 at 184:21–185:9; ECF No. 274 at 477:17–20), thereby taking them from their law enforcement duties (ECF No. 271 at 104:17–25; ECF No. 272 at 185:10–186:8; ECF No. 274 at 489:20–24). The Government also showed that Sprouse and Underwood conspired to misuse county funds to pay for first class flights for themselves and their wives to attend an out of state conference in violation of county policy. (ECF No. 275 at 709:19–708:16, 711:17–7:12:17, 737:7–17.) This evidence is sufficient to support the jury's guilty verdict for conspiracy to violate federal law by committing federal program theft.

*b. Motion for New Trial*

In support of his Motion for a New Trial, Sprouse relies entirely on the arguments set forth in support of his Motion of Judgment of Acquittal. (ECF No. 269 at 9.) The record, as set forth above, shows the Government put forth sufficient evidence to support each of Sprouse's convictions. Accordingly, this is not a "rare circumstance" requiring the court to grant a new trial. *See Smith*, 451 F.3d at 216–17.

## IV. CONCLUSION

Based upon the foregoing, the court **DENIES** Defendant Sprouse's Motion for Judgment of Acquittal and Motion for New Trial. (ECF No. 269.)

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

December 17, 2021
Columbia, South Carolina